IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shannon W.,[1] ) <br> ) <br>       **Plaintiff,** ) <br> ) <br>   v. ) <br> ) <br> MARTIN J. O'MALLEY, ) <br> **Acting Commissioner of Social Security,**[2] ) <br> ) <br>       **Defendant.** ) <br> ) | Case No. 1:23-cv-13835 <br><br> Honorable Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Shannon W.'s application for supplemental security income ("SSI"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (dkt. 15) is GRANTED and Defendant's Response to Plaintiff's Motion for Summary Judgment (dkt. 22) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings, consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

I.  **Background**

On December 31, 2019, Plaintiff filed an application for SSI, alleging disability beginning October 1, 2015. R. 838-48. Plaintiff's claim was denied initially on June 14, 2021, R. 754, and upon reconsideration on February 1, 2022, R. 767. A hearing was held before an Administrative Law Judge ("ALJ") on August 29, 2022. R. 698-727. The ALJ denied Plaintiff's claim on January 5, 2023. R. 15-38. The Appeals Council denied Plaintiff's request for review on July 27, 2023, R. 1-7, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. §404.1520. R. 20-32. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 31, 2019. R. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: "diabetes mellitus with neuropathy; obesity; bipolar disorder; depressive disorder; anxiety disorder; intellectual disorder; and neurodevelopmental disorder." R. 20-21. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 21-26. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except: "she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to fumes, odors, dusts, gases, or poorly ventilated areas; she is unable to discern the details of objects at a distance; she can frequently use the bilateral hands to perform fine and gross manipulations; she can understand, remember, and carry out simple work instructions and exercise simple workplace judgments; she

2

is limited to a low-stress environment, defined in this case as routine work involving occasional decision making and no fast-paced production demands; she can tolerate occasional interactions with co-workers and supervisors, but no more than brief and superficial interaction with the public." R. 26-31. At step four, the ALJ "expedited" the issue of past relevant work because "the nature of any past relevant work has no effect on the finding at Step 5." R. 31. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 31-32. The ALJ then concluded that Plaintiff was not disabled under the Social Security Act. R. 32.

## II. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by

legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Even under the deferential standard of review, the ALJ's assessment of the opinion of Plaintiff's psychiatric nurse, Kelly Ortega, APN, was not supported by substantial evidence and remand is thus required.

### A. Medical Opinion Evidence

Treating opinions are no longer entitled to presumptive controlling weight, and ALJs cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §404.1520c(a). ALJs are required to "articulate how [they] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. §404.1520c(b)(1). Consistency and supportability "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore [ALJs] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. §404.1520c(b)(2). ALJs may consider the other factors (e.g., the treating relationship or the provider's specialty), but are not required to do so. *Id.*

4

B.  Analysis

Plaintiff's psychiatric nurse, Kelly Ortega, APN, filled out a "Mental Impairment Questionnaire" on November 13, 2021. R. 1907-10. She opined that Plaintiff would have marked limitations in understanding, remembering, or applying information, interacting with others, and concentration, persistence, or maintaining pace, and an extreme limitation in adapting or managing oneself. R. 1909. Further, Ms. Ortega opined that Plaintiff's impairments would likely cause her to be absent from work more than three times a month and that her symptoms would interfere with the attention and concentration needed for even simple work tasks over 21% of a typical workday. R. 1908-09. At both Step Three and during the RFC determination, the ALJ considered the opinion of Ms. Ortega and found it "generally unpersuasive." R. 24, 30-31 (citing R. 1907-10). The ALJ wrote the following paragraph at both Step Three and during the RFC determination:

> "In arriving at the above conclusions, I considered the medical opinions in the evidence of record. The claimant's psychiatric provider, Kelly Ortega, APN, opined that the claimant had marked or extreme limitations in all four areas of functioning (Ex B21F[3]). I find this opinion generally unpersuasive as it is inconsistent with and not supported by the notes from the claimant's providers, including Ms. Ortega, indicating largely normal mental status despite her subjective symptom reports. While I acknowledge that the claimant's reports are a factor to be considered in evaluating the claimant's functioning, the objective examination findings do not indicate such severe restrictive functioning. I further note that Ms. Ortega and the claimant's other mental health providers regularly assessed the claimant's functioning with GAF scores of 58, indicating moderate functional limitations (Ex B4F[4]; B6F[5]; B29F[6]). While I acknowledge the limitations of GAF scores in assessing functional status, the regularity and consistency of the assessed functional limitations in contemporaneous notes is notably inconsistent with the retrospective evaluation found in the opinion statement. Given the inconsistency with the longitudinal treatment records, I find this opinion unpersuasive." R. 24, 30-31.

---

[3] R. 1907-10
[4] R. 1073-1143
[5] R. 1436-78
[6] R. 2783-2831

5

None of the ALJ's rationale for finding Ms. Ortega's opinion to be "generally unpersuasive" is supported by substantial evidence. *See* R. 24, 30-31. The ALJ found that the opinion was inconsistent with notes from Ms. Ortega and Plaintiff's other providers indicating "largely normal mental status," and was also inconsistent with the "longitudinal treatment records." *See* R. 24, 30-31. But it is unclear what notes the ALJ was referring to in the almost 2,000 pages of medical records, R. 991-2870, given that he did not cite to any records in making these conclusions. Nonetheless, the Court is permitted to view the opinion holistically, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021), and will do so to determine whether his discussion elsewhere in the opinion supports his conclusion that Plaintiff's treatment notes indicate a "largely normal mental status" and were "inconsistent" with Ms. Ortega's opinion. See R. 24, 30.

Looking at the opinion as a whole, it remains unclear how the ALJ concluded that treatment notes indicated that Plaintiff displayed a "largely normal mental status" and were inconsistent with Ms. Ortega's opinion. As Defendant points out, the ALJ cited to records showing some normal mental status findings in his decision, while he also acknowledged that they included some abnormal findings. Dkt. 22 at 9 (citing R. 22-23, 29). However, nowhere in the decision does he explain how he weighed these differing findings such that they led to a conclusion that Plaintiff's mental status was documented as "largely normal." A review of the medical records indicates that there were abnormal findings in a many of the records, yet the ALJ focused on the normal findings without explanation of why he did so as opposed to the abnormal findings. By doing so, he engaged in the "type of cherry-picking that [has been] repeatedly forbidden." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014).

For example, at Step Three the ALJ discussed some of Plaintiff's mental status exams, citing to about 200 pages of medical records. R. 22 (citing R. 1073-1143, 1436-78, 2783-2870).

The ALJ stated, "Mental status examinations from the claimant's mental health providers indicate she has regularly presented with logical thought processes, although at times concrete, and with generally normal cognition and average intelligence, although there are occasional reports that she presents with variable memory and diminished intelligence." *Id.* Elsewhere in Step Three, citing the same swath of records, the ALJ stated, "Mental status examination findings from the claimant's providers indicate she regularly presents with thought content and processes within normal limits, perception and psychomotor activity within normal limits, and no outward sign of hallucinations or delusions that would interfere with thought processes." R. 23 (citing R. 1073-1143, 1436-78, 2783-2870). But a closer look at the cited medical records shows that the ALJ's statements about Plaintiff's mental status exams do not reflect an accurate picture – many of the exams contain multiple abnormal findings related to her thinking or memory, even where they also contain normal findings. *See, e.g.*, R. 1074 ("blunted" "affect," "concrete slowed thinking," "impairment of ability to abstract," and "erratic/inconsistent" "fund of knowledge"), R. 1120 ("erratic/inconsistent memory"), R. 1127 ("preoccupations/ruminations depressive"), R. 1456 ("preoccupations/ruminations depressive," and "partial insight"), R. 2790 ("overproductive" speech, "preoccupations/ruminations," and "partial insight"), R. 2798 ("thought process" was "circumstantial tangential," "preoccupations/ruminations depressive," and "partial insight"), R. 2827 ("depressed" "mood" and "hallucination[s]…seeing ghosts").

Given all of the abnormal findings throughout the record, it is a mystery without more explanation, and thus not supported by substantial evidence, how the ALJ concluded that Plaintiff's treatment notes indicated that her mental status was "largely normal.". *See* R. 24, 30. If the normal findings in Plaintiff's notes were more persuasive than the abnormal ones, the ALJ should have provided some indication of how or why he thought that. *See Sara N. v. Saul*, No. 20

7

CV 50006, 2021 WL 4712711, at *3 (N.D. Ill. Jan. 11, 2021) ("What is missing is a medical analysis confirming that the normal findings being cited were medically more significant than the contrary findings."). The ALJ was not permitted to rely only on the evidence that supports his opinion. *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports her opinion.").

Additionally, the ALJ's reliance on Plaintiff's GAF score also failed to support his decision to discredit Ms. Ortega's opinion, because his consideration of Plaintiff's GAF score was problematic. The GAF is "a scale of 1 to 100 used by mental health clinicians and physicians to help determine how well a person is doing in adjusting to the psychological and other challenges of living; the higher the score, the better he's doing." *Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015). A GAF score between 51 and 60 indicates a "'moderate' impairment of overall functioning." *Crump v. Saul*, 932 F.3d 567, 568 (7th Cir. 2019). It is no longer widely used by psychiatrists and psychologists but is sometimes considered by the Social Security Administration. *Id.*; *Winsted v. Berryhill*, 923 F.3d 472, 474 (7th Cir. 2019). The American Psychological Association ("APA") stopped using GAF scores in 2013. *Pasqueno v. Kijakazi*, No. 20-CV-3270, 2022 WL 428162, at *1 (C.D. Ill. Feb. 11, 2022) (citing APA, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-5 or DSM-V), at 16).

In discrediting Ms. Ortega's opinion on this basis, the ALJ cited to the same almost 200 pages of medical records he cited to in discussing Plaintiff's mental status exams and stated, "Ms. Ortega and the claimant's other mental health providers ***regularly assessed*** the claimant's functioning with GAF scores of 58, indicating moderate functional limitations." R. 24, 31 (emphasis added) (citing R. 1073-1143, 1436-78, 2783-2870). He further stated, "While I acknowledge the limitations of GAF scores in assessing functional status, the regularity and

8

consistency of the assessed functional limitations in contemporaneous notes is notably inconsistent with the retrospective evaluation found in the opinion statement." *Id.*

A review of the cited medical records indeed shows that a GAF score of 58 was listed for Plaintiff throughout her psychiatry records from Sinai Health System. *See, e.g.*, R. 1082, 1439, 2791. However, upon a closer look, it does not appear that this score was "regularly assessed." There is compelling evidence that this score was not actually being reassessed each time it was listed, but that instead, the same score was copied each time a patient record was made. First, Plaintiff's records are from five to eight years after the APA stopped using the GAF scale in 2013. *See Pasqueno*, 2022 WL 428162, at *1. Second, Plaintiff's GAF score never changed from 58, even where her treatments show abnormal findings, such as hallucinations and suicidal ideation, *see, e.g.*, R. 2827-28. Lastly, Plaintiff's GAF score was reassessed as "current" when a "Progress Note" was entered about staff obtaining prior authorization for Plaintiff's medication, even though Plaintiff was not present or involved. R. 2787-88. Based on those reasons, it does not seem that Plaintiff was regularly assessed with a GAF score of 58, as the ALJ asserted, but rather it was one score in time that was copied over and over in her medical records.

To be clear, the Court is not saying that the ALJ was not allowed to consider the GAF score at all, or dictating how he should have weighed it; however, there is significant reason to believe that the GAF score he relied on was not being used and/or re-assessed by Plaintiff's providers, and it does not appear that the ALJ considered that possibility. Given that, the score does not offer substantial evidence to discredit Ms. Ortega's opinion, especially when the other reason the ALJ gave to discredit the opinion was also insufficient, as discussed above.

Lastly, the Court cannot see without further explanation from the ALJ how the "contemporaneous notes" to the GAF scores show regularly and consistently assessed functional

9

limitations that are inconsistent with Ms. Ortega's opinion. These are the same records that the Court discussed above regarding the mental status exams, and as explained above, they also include abnormal findings, along with normal findings. Again, the ALJ was not permitted to rely only on the evidence that supports his opinion. *See Bates*, 736 F.3d at 1099. Ultimately, the ALJ failed to minimally articulate how his decision to discredit Ms. Ortega's opinion was supported by substantial evidence, and thus remand is required.

## IV. CONCLUSION

Plaintiff's Brief in Support of Reversing the Decision of the Commissioner (dkt. 15) is GRANTED and Defendant's Response to Plaintiff's Motion for Summary Judgment (dkt. 22) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: September 30, 2024

BETH W. JANTZ
United States Magistrate Judge